PETERSON, J.
Venecia Gilliam appeals a final summary judgment in favor of A.R. Miller Engineering, Inc. (“Miller”). We reverse.
Providing general engineering services to the City of Minneola, Florida (“Minneo-la”), Miller designed a booster station to solve a water pressure problem in a segment of its public water system. A specification for construction bids was drawn up that utilized a new 5,000 gallon water storage tank. Minneola asked Miller to also prepare an alternate specification utilizing a 8,500 tank that had been previously used in the system.
Complying with Minneola’s request, Miller prepared the alternate specification, but recommended, in the event the old tank was used, it be professionally inspected and tested. Ultimately, the specification utilizing the 3,500 tank was chosen for construction by Minneola. Minneola then asked Miller to obtain a proposal for the inspection and he secured one from a testing firm. When Miller received the proposal from the testing firm, he forwarded it to Minneola, along with a package of other documents. Apparently nothing further was done by anyone to consider or accept the proposal and the tank was never inspected. The party who was responsible for accepting the proposal and reviewing the results remains disputed.
Before the 3,500 gallon tank was incorporated into the new water system in late 1992, Minneola employees sandblasted and painted the tank so that it appeared to have been refurbished. Miller and Min-neola employees were present at the initial run of the new booster system and it is here that another factual dispute arises. Miller asserts that he inquired about the proposed inspection and was led to believe by Minneola that it was accomplished. The refurbished appearance reinforced his belief that the inspection had been performed. A deposition of a Minneola employee, however, counters Miller’s assertions.
Unfortunately, the appellant’s husband was killed when the tank ruptured just over two years after completion of the booster station. The tank ruptured because of defective welds that had been made 19 years earlier to patch a rectangular hole in the tank. Ironically, the hole had been cut in 1976 to inspect the tank. Complicating the disputed cause of the rupture is the installation, between 1992 and 1995, of a replacement pump which did not comply with Miller’s original specifica *1250 tions. Miller had no part in the installation of the substitute pump. Nonetheless, we conclude that because factual issues remain as to Miller’s role and responsibility during the initial installation of the booster station and in the inspection of the 3,500 gallon water tank, we must reverse the summary judgment and remand for further proceedings.
SUMMARY JUDGMENT VACATED; REMANDED.
ANTOON, C.J., and COBB, J., concur.